# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD LEWIS and CHRISTINA LEWIS        :
                                                 :

            *Plaintiffs,*        :        CIV. ACT. No. _____

            v.        :

                                                 :

BOROUGH OF CONSHOHOCKEN;        :
CONSHOHOCKEN POLICE DEPARTMENT;        :
DAVID LENNON, IN HIS OFFICIAL CAPACITY :
AS BOROUGH OF CONSHOHOCKEN        :        JURY TRIAL DEMANDED
CHIEF OF POLICE;        :
XAVIER PEREZ, ERIC HALL, PATRICK        :
FUSCO, CALEB SMITH; MATTHEW FOSTER,    :
FRANCIS BLAKE, AND MICHAEL CONNOR,    :
IN THEIR OFFICAL CAPACITIES AS POLICE    :
OFFICERS IN THE CONSHOHOCKEN POLICE :
DEPARTMENT;        :
BOROUGH OF CONSHOHOCKEN        :
SOLICITOR'S OFFICE;        :
MICHAEL PETERS, ESQ., AND        :
MARK EASTBURN, ESQ.,        :
IN THEIR OFFICIAL CAPACITY AS A        :
BOROUGH OF CONSHOHOCKEN SOLICITOR, :
                                               :
            *Defendants.*        :

## <u>COMPLAINT</u>

Plaintiffs Richard Lewis and Christina Lewis through their undersigned counsel, hereby

submit the following Complaint against the Borough of Conshohocken; the Conshohocken Police

Department; David Lennon, in his official capacity as the Borough of Conshohocken Chief of

Police; Officers Xavier Perez, Eric Hall, Patrick Fusco, Caleb Smith, Matthew Foster, Francis

Blake and/or Michael Connor, in their official capacity as police officers in the Conshohocken

Police Department; the Borough of Conshohocken Solicitor's Office; Michael Peters, Esq., in his

official capacity as the Borough of Conshohocken Solicitor; and Mark Eastburn, Esq., in his

official capacity as a Borough of Conshohocken Solicitor; (collectively hereinafter "Defendants").

In support thereof, Richard Lewis and Christina Lewis plead as follows:

## INTRODUCTION

1.    This action arises from Defendants' discriminatory policies and practices, including selective enforcement of Borough ordinances, which enabled and compounded years of race-based harassment by private citizens against Plaintiffs Richard Lewis and Christina Lewis. Through a targeted enforcement memorandum,[1] the Conshohocken Police Department, under the direction of Chief David Lennon, selectively enforced parking ordinances against Plaintiffs in a manner designed to disproportionately impact them, in violation of the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. §§ 1983 and 1985, and Pennsylvania law.

2.    Mr. Lewis and Ms. Lewis allege that all of the Defendants acted under color of state law and violated their rights under the Fourth and Fourteenth Amendments to the Constitution of the United States. Plaintiffs also bring state law claims pursuant to this Court's supplemental jurisdiction.

## JURISDICTION AND VENUE

3.    Pursuant to 18 U.S.C. §§ 1331 and 1343, this Court possesses original jurisdiction because this case involves a federal question. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

4.    Venue in the United States District Court for the Eastern District of Pennsylvania is proper in this jurisdiction pursuant to 28 U.S.C. § 1391.

## THE PARTIES

---

[1] *See* Exhibit A where on December 10, 2024, Officers Perez, Hall, Fusco, and Blake testified in a Pennsylvania Magisterial District Court hearing for the Commonwealth against Richard Lewis and Christina Lewis regarding multiple summary parking matters that Chief Lennon issued an enforcement memo to enforce a certain Borough parking ordinance only in the alleyway that runs behind the 300 block of E 11th Avenue, the block where the Lewis Family resides; Ironically, the enforcement memo targets the very same alley that the Conshohocken Solicitor's office stated was a "private" alley.

5.      Plaintiff Richard Lewis ("R. Lewis" or "Mr. Lewis")  is a United States Citizen, African American adult male individual, residing at 3601 Conshohocken Avenue, Philadelphia, Pennsylvania, 19131, who previously resided at and whose permanent address is the 344 E. 11th Avenue, Conshohocken, Pennsylvania, 19428 home.

6.      Plaintiff Christina Lewis ("C. Lewis" or "Ms. Lewis") is an adult individual currently residing at the 344 E. 11th Avenue, Conshohocken, Pennsylvania, 19428 home. Ms. Lewis is Richard Lewis's mother.

7.      Defendant the Borough of Conshohocken (the "Borough") is a municipality located in Montgomery County, Pennsylvania.

8.      Defendant the Conshohocken Borough Police Department (the "CPD") is a Pennsylvania police department formed pursuant to 8 Pa.C.S. § 1121 et seq. and authorized, pursuant to 42 Pa.C.S. § 8952, to enforce the laws of the Commonwealth of Pennsylvania.

9.      Defendant David Lennon ("Chief Lennon") is an adult individual and the Chief of Police at the Conshohocken Police Department.

10.      Defendant Xavier Perez ("Officer Perez") is an adult individual and a police officer in the Conshohocken Police Department.

11.      Defendant Eric Hall ("Officer Hall") is an adult individual and a police officer in the Conshohocken Police Department.

12.      Defendant Patrick Fusco ("Officer Fusco") is an adult individual and a police officer in the Conshohocken Police Department.

13.      Defendant Caleb Smith ("Officer Smith") is an adult individual and a police officer in the Conshohocken Police Department.

14.      Defendant Mathew Foster ("Officer Foster") is an adult individual and a police

officer in the Conshohocken Police Department.

15.    Defendant Francis Blake ("Officer Blake") is an adult individual and a police officer in the Conshohocken Police Department.

16.    Defendant Michael Connor ("Sergeant Connor") is an adult individual and a sergeant in the Conshohocken Police Department.

17.    Defendant Conshohocken Borough Solicitor's Office ("Solicitor's Office") is a government agency.

18.    Defendant Michael Peters, Esq. ("Solicitor") is an adult individual who served as a solicitor for the Conshohocken Borough.

19.    Defendant Mark Eastburn, Esq. ("Attorney Eastburn") is an adult individual who served as a solicitor for the Conshohocken Borough.

## FACTUAL BACKGROUND

20.    For the first thirty-two (32) years of R. Lewis' life, he called 344 E. 11th Avenue, Conshohocken, Pennsylvania, 19428 home ("344 E. 11th"). Although R. Lewis and his wife Suelen Mewes ("Suelen") made a temporary move to an apartment in Philadelphia to find relief from the racial targeting and harassment carried out by Defendants as well as by certain neighbors, 344 E. 11th is his permanent home.

21.    The 300 block of E. 11th Avenue is made up of a combination of twin homes and single-family dwellings, most of which were constructed in the first half of the twentieth (20th) century. An alleyway runs behind the homes on the 300 block of E. 11th Avenue, separating those homes from the homes on the 300 block of E. 12th Avenue (the "Alleyway"). *See* Land Survey, attached as Exhibit C, and incorporated herein as if set more fully at length.

22.    Mr. Lewis attended public school in the Colonial School District where he

graduated from Plymouth-Whitemarsh High School. After high school, Mr. Lewis continued his academic pursuits by studying engineering at Temple University where he graduated with a Bachelor of Science in Engineering Technology. He is employed as a Core Engineer II at Parker Hannifin, a Fortune 250 global leader in motion and control technologies.

23.     Mr. Lewis was a volunteer within the Conshohocken community. Following in Ms. Lewis's footsteps, where she served on the executive board of the Spring Mill Fire Company No. 1, Mr. Lewis served as a volunteer fire fighter in that same firehouse.

24.     From resident to student to volunteer, for decades, Mr. Lewis was and hopes to again, be a part of the Conshohocken community.

25.     For many decades, the Lewis Family, a family comprised of a mosaic of races and ethnicities, lived on a block that was otherwise racially homogenous. And for those many decades, the Lewis Family members were simply known as good neighbors. They were not known as good black neighbors or good Latina neighbors or good white neighbors, but just as good neighbors. But recent efforts by certain Lewis Family neighbors were undertaken to break the cohesiveness long felt on the 300 block of E. 11th avenue.

26.     Unfortunately, on September 27, 2020, the harmony that long existed among the neighbors on the 300 block of east eleventh and twelfth avenues began to crumble. On that day, Suelen, while driving down the Alleyway and listening to Spanish music, was chased by an older white female saying that Suelen could not speak or understand English.  Suelen was of course scared, so she parked her car and quickly and ran into her Home.

27.     On or around, June 2020 certain neighbors, believed to be Dan Scheinman, Kristen Scheinman, and Stefanie Smith (hereinafter referred to as "Those Certain Neighbors"), began

accusing R. Lewis and C. Lewis of speeding through the Alleyway.[2]

28.    Under the pretense of the speeding accusations, Those Certain Neighbors installed multiple sets of unlawful speed bumps in the Alleyway thereby impeding R. Lewis and C. Lewis from parking their cars in the Alleyway directly behind 344 E. 11th.

29.    Furthermore, Those Certain Neighbors would park their vehicles on opposite sides of the alley in coordination with the speed bumps to harass and hinder the ingress and egress of Plaintiffs.

30.    At one point, Those Certain Neighbors haphazardly affixed at least five (5) of these unlawful and hazardous speed bumps in the Alleyway. Those Certain Neighbors also parked their cars in a "serpentine" snake formation making navigation of the alleyway difficult.

31.    On February 22, 2023, neighbor Stephanie Smith ("Smith"), who lives a few doors down from the Lewis Family, called the CPD complaining of a local resident speeding in the Alleyway. Officer Perez was the responding officer to Smith's complaint. Certain Lewis Family members were identified by Smith as the purported speeders.   Officer Perez drafted a report based upon Smith's complaint and a purported video of the speeding.

32.    Unbelieving that any evidence existed of either him or C. Lewis speeding, Mr. Lewis went to the CPD and asked an officer on duty to review the video evidence. The evidence was comical. As a trained engineer, Mr. Lewis explained to the duty officer, who viewed the video with Mr. Lewis, that the frame rate and resolution of the video could not allow a layperson to make any determination of speed. The duty officer agreed with Mr. Lewis's assertion that no evidence of speeding existed.

33.    The day after the incident with Smith and Officer Perez, on February 23, 2023, Mr.

---

[2] The speed limit in the Conshohocken Borough for the Alleway is 15 mph.

Lewis contacted the CPD regarding a parking complaint involving Smith. Officer Perez was again the investigating officer. Officer Perez concluded that Mr. Lewis's complaint did not have merit and therefore did not warrant taking a written complaint.

34.    On that same day, Mr. Lewis emailed Officer Perez details of the harassment that he and his family had recently endured. He explained that Smith and other neighbors were using contrived speeding complaints as a pretext to push the CPD into harassing the Lewis Family.

35.    Officer Perez was not receptive to Mr. Lewis's report of harassment, telling Mr. Lewis that "this isn't about race."

36.    Looking for help from his local government, on September 13, 2023, Mr. Lewis formally placed the Borough on notice by emailing Chris Smalls, a Borough government employee, of the unbelievable harassment and racial animus the Lewis Family had been experiencing.

37.    Mr. Lewis detailed the multiyear race-based harassment that he and his family had endured at the hands of a select few neighbors and the abject failure of the CPD to not only work to quell the harassment but instead, enable the behavior through a failure to fairly police.[3] No meaningful response was received from the Borough.

38.    With no help from the CPD or from the Borough, the unabated hatred continued. In October of 2023, Smith's father confronted Mr. Lewis on the Lewis Family property. Smith's father was yelling more of the same race-based insults that Mr. Lewis "does not belong here and needs to leave."

---

[3] § 6-702 of the Borough Code declares it to be the public policy of the Borough to foster equality and equal opportunity for all citizens, regardless of actual or perceived ethnicity, race, color, ancestry, religion, national origin, gender….in all matters effecting employment, housing and commercial property, public education and public accommodation and to safeguard the right of all persons to remain free of discrimination or discriminatory practices in any of the foregoing aspects of their lives.

39.     However, this time, there was a ratcheting up of the vitriol. Smith's father was not only on the Lewis Family property, but he also had his fist clinched very close to Mr. Lewis's face as he was yelling those hurtful words.

40.     Mr. Lewis called 9-1-1 given the threatening environment. Surely, the CPD would see and put a stop to the threats and race-based harassment coming from Smith, Smith's father, and others.

41.     Again, nothing of substance was done by the CPD to protect the Lewis Family from those threats.

42.     In December of 2023, hoping to at least force removal of the illegally installed speed bumps, which disproportionately impacted the Lewis Family as they park in the Alleyway behind their home, the Lewis' then counsel sent an email to the Borough Solicitor detailing the issue at hand and citing borough ordinances that Those Certain Neighbors had violated by installing the speed bumps across the Alleyway. The email asked the Borough to enforce its own ordinance and remove the speed bumps.  *See* Emails with Solicitor, attached as Exhibit D, and incorporated herein as if set more fully at length.

43.     The Borough's Solicitor promptly responded with an email stating that the Alleyway is private and therefore the Borough does not have the authority to enforce Borough ordinances within the Alleyway. The Solicitor asserted that the speed bump matter was therefore a private matter between the neighbors.  *See* Exhibit D.

44.     On the heels of the Solicitor's proclamation that the Borough had no jurisdiction over the Alleyway, Chief Lennon, in direct contravention to the Solicitor's proclamation, ramped up the harassment of the Lewis Family by reportedly commanding his CPD officers to enforce a certain Borough parking ordinance within the Alleyway, the very same Alleyway where the

Borough's Solicitor had just unequivocally stated that the CPD did not have the authority to enforce its parking ordinances.  *See* Exhibits A at, 75:13-15  .

45.    And, according to the testimony of multiple CPD officers, the Memo directed them to enforce the Borough parking ordinance ONLY in the alley that separated the 300 block of 11th and 12th Avenues.  Exhibit A at 75:20-21.

46.    Officers testified that the Memo stated that CPD officers were to target the Alleyway for enforcement of a specific Borough parking ordinance which was § 15-1101 of the Borough Code:

> It shall be unlawful for any motor vehicle to park or to remain parked in an alleyway within the Borough of Conshohocken if such vehicle is parked in such manner as to impair or impede the clear passage of emergency vehicles and/or if such vehicle is parked in such manner as to reduce the clear drive aisle of the alleyway to less than 10 feet in width.

BOROUGH OF CONSHOHOCKEN, PA., MUNICIPAL CODE § 15-1101 (2024).

47.    The CPD knew from its interactions with Those Certain Neighbors that the Lewis Family parked their cars in the Alleyway behind 344 E. 11th. In fact, the Lewis Family has parked their cars behind 344 E. 11th, without incident, for decades, so Chief Lennon knew that mandating the enforcement of  § 15-1101 only in this specific alley would provide the CPD with a legal basis to keep the Lewis Family under thumb.

48.    Chief Lennon's officers executed the enforcement order in the Memo to perfection. In just nine (9) days, from July 20, 2024 to July 29, 2024, Mr. Lewis was cited for violating § 15-1101three (3) times and Ms. Lewis was cited six (6) times.  *See* Exhibits A, at 3.

49.    However, what Chief Lennon and his officers failed to realize was that the Lewis Family was never in violation of § 15-1101. The Alleyway is twenty feet (20') which allows for

parking a car in the Alleyway while leaving the required ten (10) feet of clearance.  *See* Exhibit C.

50.     Even though the officers admitted in testimony to never measuring the width of the Alleyway or the clearance between a Lewis car and the opposite side of the Alleyway, on July 20, 2024, Officers Perez and Smith collectively issued Mr. Lewis two (2) § 15-1101 citations.  *See* Exhibit A at .

51.     On July 26, 2024, Officer Hall issued Mr. Lewis and Ms. Lewis each a § 15-1101 citation.  The very next day, Officer Hall issued Ms. Lewis another § 15-1101 citation, without knowing the actual width of the alley. [4]  Officer Foster issued Ms. Lewis another § 15-1101 citation on July 29, 2024, without knowing the actual width of the alley.  *See* Exhibits A at 12:15, 28:19-21, and 29:14-15; and Exhibit B at,  33:1-19, 34:4-9, 38:10-20.

52.     Mr. Lewis and Ms. Lewis challenged all of the citations and were found not guilty of violating the § 15-1101on all but one citation.[5]  During this hearing, the same Borough solicitor who proclaimed that the CPD did not have the jurisdiction to enforce Borough parking ordinances in the Alleyway sat quietly by in the courtroom gallery.

53.     The Lewises did appeal the single § 15-1101 citation that they unsuccessfully challenged to the Montgomery County Court of Common Pleas.

54.     At the appeal, Solicitor Eastburn, who was now prosecuting the remaining citation, stipulated to the email from the Solicitor's Office that stated the "solicitor's office does not get involved. These are paper streets. They were never opened. They are no longer under the control of the borough and have private easements. The borough has no control over private alleys."  *See*

---

[4] Officer Hall  testified that there were no traffic control devices or any signs stating parking permitted prohibited, and there were no studies conducted to determine that parking in the Alleyway, necessarily including Mr. Lewis and Ms. Lewis' parking in the Alleyway wherein Officer Hall issued a citation, was a hazard in any way.  See Exhibit A at 28:12-18.
[5] At the hearing at the magistrate district court, the CPD withdrew some of the § 15-1101 citations without stating their reasons.

Exhibit B at 6:5-25.

55.    The Lewises prevailed in their appeal and were found not guilty of violating the remaining § 15-1101 claim against them.

56.    In August of 2024, Mr. Lewis, through his then counsel, filed a complaint with the Borough about the disproportionate enforcement of Borough Codes, the CPD Memo, and the Solicitor's inconsistent application of the law.

57.    The Borough retained Attorney Tiffany Allen ("Attorney Allen") of Campbell Durrant, P.C., to investigate Mr. Lewis' complaints.

58.    On, or about, September 30, 2024, Attorney Allen interviewed Ms. Lewis, Mr. Lewis, and Suelen.  Attorney Allen was also provided:

    a.  Twenty (20) CPD Incident Reports involving the Lewis Family, Alleway, and/or the 300 block of E. 11th Avenue;

    b.  Email correspondence between Mr. Lewis and Officer Perez; and

    c.  Email correspondence between Mr. Lewis and Chris Smalls of the Borough.

59.    Additional documentation was provided to Attorney Allen at her request.  Although it is believed that the investigation has concluded, the Lewises have not been provided with a copy of Attorney Allen's findings.   Requests from the Lewises for a copy of Attorney Allen's findings have gone unanswered.

**COUNT I**
***42 U.S. Code § 1983***
***Violation of the Equal Protection Clause***
***of the Fourteenth Amendment***
**(Richard Lewis v. All Defendants)**

60.    Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

61.    Mr. Lewis is an African American.

62.    Defendants at all times relevant to this action were acting under color of state law.

63.    The Memo issued by Chief Lennon ensured the disproportionate application of the law because it was drafted in such a way that enforcing it would affect Mr. Lewis at a much higher rate than any other Borough resident.

64.    Testimony from the CPD officers confirmed that only the 300 block of east 11th avenue would be targeted, and it was known that the Lewis Family was the only family consistently parking in the Alleyway. Therefore, enforcement of the ordinance contained in the Memo was a surefire way of ensuring Mr. Lewis would be almost exclusively harmed.

65.    Mr. Lewis, as an African American, is a member of a protected class, and he was treated differently than the white residents in the Borough.

66.    This disparate treatment by the CPD of Mr. Lewis from his white neighbors and the disproportionate enforcement of the Ordinance are exemplary of Defendants' violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

67.    As a result, Richard Lewis has and continues to suffer severe emotional distress and mental anguish, including constant fear and stress, humiliation, loss of self-esteem, mental anguish, emotional distress, and anxiety, and significant financial and economic losses and harm, all of which were proximately and directly caused by the unconstitutional, unlawful, and racially motivated actions of Defendants.

### COUNT II
### *42 U.S. Code § 1983*
### *Selective Enforcement*
### (Richard Lewis v. Defendants)

68.    Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

69.    Defendants at all times relevant to this action were acting under color of state law.

70.     Mr. Lewis was subjected to multiple years of race-based harassment. This was reported to Officer Perez in an email. It was also reported in detail to Chris Small, a member of the Borough's municipal government.

71.     In response to Mr. Lewis's concerns, the CPD did not instruct its officers on how to equally and fairly apply the law to citizens of all backgrounds, but instead, the head of the CPD, Chief Lennon, drafted a memo that was laser focused to target Mr. Lewis; a sinister and intentional approach that allowed the CPD to harass Mr. Lewis, a black man, under the guise of enforcing a parking ordinance.

72.     The drafting of such a narrowly focused enforcement memo shows that the CPD's intent was for reasons other than the stated purpose of the ordinance which is to allow emergency vehicles to safely navigate through alleyways. One Memo focused on one alley which by design focuses enforcement against one black man is selective enforcement personified.

73.     As a result, Richard Lewis has and continues to suffer severe emotional distress and mental anguish, including constant fear and stress, humiliation, loss of self-esteem, mental anguish, emotional distress, and anxiety, and significant financial and economic losses and harm, all of which were proximately and directly caused by the unconstitutional, unlawful, and racially motivated actions the Defendants.

## COUNT III
### *42 U.S. Code § 1985(3)*
### *Conspiracy to Interfere With Civil Rights*
### **(Richard Lewis v. Defendants)**

74.     Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

75.     Defendants at all times relevant to this action were acting under color of state law.

76.     All Defendants worked in perfect concert to deprive Mr. Lewis of the rights and

protections afforded him under law.

77.    Officer Perez started the process by making it clear with action and word that Those Certain Neighbors were afforded more protection under the law than was Mr. Lewis.

78.    Officer Perez allowed Those Certain Neighbors to maintain the illegally placed speed bumps in the Alleyway.  Officer Perez refused to act on Mr. Lewis's complaints, and Officer Perez protected Those Certain Neighbors even when they overtly harassed Mr. Lewis while he was on his own property.

79.    The Solicitor's Office is next — to provide cover to the CPD and an excuse to not enforce the Borough's ordinance preventing citizens from blocking alleyways through the installation of speed bumps, the Solicitor's Office made it clear in a memo-like email that the Alleyway is private, nothing more than a "paper street" and therefore, the CPD does not enforce Borough parking ordinances in the Alleyway.

80.    Chief Lennon then joined the conspiracy to deprive Mr. Lewis of his rights under law. In direct contravention to the Solicitor's proclamation that the CPD does not enforce parking ordinances in the Alleyway, Chief Lennon issued an enforcement memo so carefully crafted that it could only be interpreted as a means to enable the CPD to target Mr. Lewis.

81.    Indeed, knowing that the Lewis Family members were the only people who consistently used the Alleyway as a place to park, the Memo perfectly targeted only the Lewis Family, in a Borough with ten thousand (10,000) or so residents.

82.    In furtherance of the conspiracy, Officers Perez, Smith, Foster, Hall, Fusco, and Blake issued parking violations in an area where the Solicitor indicated the CPD had no jurisdiction to do so, and, even if jurisdiction was afforded, in order to have violated the ordinance, the citizen's action of parking in the Alleyway would have had to leave less than ten (10) feet of space between

14

the citizen's parked car and the other side of the Alleyway.

83.    Under oath, each CPD Officer who issued a violation admitted that they were acting under the direction of the enforcement memo and NEVER measured the width of the Alleyway nor the amount of space left between a Lewis Family car and the other side of the Alleyway, prerequisite in determining whether a violation occurred.

84.    The Solicitor's Office again inserts itself into the Conspiracy by prosecuting the remaining § 15-1101 citation at the appeal in the Montgomery County Court of Common Pleas. There, Solicitor Eastburn argued that the CPD could enforce the parking ordinance within the Alleyway, the location where the Solicitor's Office's memo-like email clearly stated the CPD did not have jurisdiction to do so.

85.    As a result of the Defendants' conspiracy to deprive Mr. Lewis of his constitutional right to Equal Protection, Mr. Lewis has and continues to suffer severe emotional distress and mental anguish, including constant fear and stress, humiliation, loss of self-esteem, mental anguish, emotional distress, and anxiety, and significant financial and economic losses and harm, all of which were proximately and directly caused by the unconstitutional, unlawful, and racially motivated actions of Defendants.

### COUNT IV
#### 42 U.S. Code § 1983
#### Malicious Prosecution
**(Richard Lewis and Christina Lewis v. Defendants)**

86.    Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

87.    The officers of the Conshohocken Police Department, necessarily including Officers Perez, Smith, and Hall executed the enforcement order in Chief Lennon's Memo, issuing Mr. Lewis and Ms. Lewis a combined nine (9) § 15-1101 citations between July 20, 2024 and

July 29, 2024.  *See* Exhibits A and B.

88.    The officers prosecuted Mr. Lewis' and Ms. Lewis' Summary Trials.  *See* Exhibit A.

89.    Despite the Solicitor's representations that the CPD does not have jurisdiction to enforce ordinances in the Alleyway, Solicitor Eastburn, on behalf of the Commonwealth of Pennsylvania, prosecuted Mr. Lewis's and Ms. Lewis's Summary Appeal.  *See* Exhibits B and D.

90.    Defendants, including Officers Perez, Smith, and Hall and Solicitor Eastburn, influenced or participated in the decision to institute the legal proceedings against Mr. Lewis and Ms. Lewis, and did so without probable cause.

91.    The proceedings terminated in favor of Mr. Lewis.  *See* Exhibits A and B; Not Guilty Verdict, attached as Exhibit E, and incorporated herein, as if more fully set at length.

92.    Because of the Defendants' malicious prosecution, Mr. Lewis and Ms. Lewis suffered a deprivation of liberty, their constitutional rights, and rights under Federal law. Mr. Lewis and Ms. Lewis were deprived of the ability to fully utilize their property, denied the opportunity to park their vehicles behind their home, and restricted from utilizing the Alleyway.

93.    As a result, Richard Lewis and Christina Lewis have and continue  to suffer severe emotional distress and mental anguish, including constant fear and stress, humiliation, loss of self-esteem, mental anguish, emotional distress, and anxiety, and significant financial and economic losses and harm, all of which were proximately and directly caused by the unconstitutional, unlawful, and racially motivated actions of Defendants.

### COUNT V
***Violation of State Law***
***Common Law Malicious Prosecution***
**(Richard Lewis and Christina Lewis v. Defendants)**

94.    Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten

herein.

95.    The officers of the Conshohocken Police Department, necessarily including Officers Perez, Smith, and Hall executed the enforcement order in Chief Lennon's Memo, issuing Mr. Lewis and Ms. Lewis citations a combined nine (9) times between July 20, 2024 and July 29, 2024, which initiated legal proceedings.  *See* Exhibits A and B.

96.    The officers prosecuted Mr. Lewis' Summary Trials.  *See* Exhibit A.

97.    Solicitor Eastburn prosecuted the Lewis' Summary Appeal.  *See* Exhibit B.

98.    Defendants, including Officers Perez, Smith, and Hall and Attorney Eastburn, acted with malice, and initiated the proceedings without probable cause.

99.    The proceedings terminated in favor of the Lewises.  *See* Exhibits A, B, and E.

100.    As a result of Defendants actions, Richard Lewis and Christina Lewis have and continue  to suffer severe emotional distress and mental anguish, including constant fear and stress, humiliation, loss of self-esteem, mental anguish, emotional distress, and anxiety, and significant financial and economic losses and harm, all of which were proximately and directly caused by the unconstitutional, unlawful, and racially motivated actions of Attorney Eastburn.

<u>**COUNT VIII**</u>
*Violation of State Law*
*Intentional Infliction of Emotional Distress*
**(Richard Lewis v. Defendants)**

101.    Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

102.    Defendants repeatedly engaged in extreme and outrageous behavior by supporting the race-based harassment of the neighbors, by unequally enforcing the law against the disorderly white neighbors, while citing Mr. Lewis for disorderly conduct for defending himself from this 21st century discrimination.

103.    Defendants knew of the harm it was causing Mr. Lewis because of the multiple communications he had with the Borough asking for help. However, help was never offered.

104.    The CPB were enablers to the harassment carried out by Those Certain Neighbors, and the CPD knew the harassment was ongoing, pervasive and intentional. The issuance of the Memo targeting Mr. Lewis was intentional, designed to intimidate and cause fear. If a memo could be created to target one (1) citizen among ten thousand (10,000), then Mr. Lewis rightfully would wonder if there were any limits to what the CPB could do to him.

105.    Defendants' targeting of Mr. Lewis and their failure to protect him and his wife from aggressive and racist neighbors caused enough fear that Mr. Lewis rented an apartment in Philadelphia to escape the harassment until he felt it was safe to return to 344 E. 11th.

106.    As a result of Defendants' intentional infliction of emotional distress, Mr. Lewis has suffered pecuniary losses, physical damage, emotional pain, anguish and suffering, humiliation, inconvenience, loss of enjoyment of life, and other non-pecuniary losses, as set forth herein

**WHEREFORE**, Plaintiff prays that this Honorable Court enter an Order:

A.    Awarding Plaintiffs actual and punitive damages, as well as damages for the pain, suffering, emotional distress, and humiliation caused by Defendants' actions and omissions;

B.    Affording Plaintiffs other equitable and legal relief as this Honorable Court deems just, proper, and appropriate;

C.    Awarding Plaintiffs the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law; and

D.    A trial by jury to the extent allowed by applicable law.

KEPHART LAW, LLC

By:_____
Christopher J. Kephart (PA ID. 326932)
Kephart Law, LLC
18 Campus BLVD., Suite 100
Newtown Square, PA 19073
(484) 373-4779

*Counsel for Plaintiffs*