**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RICHARD LEWIS and CHRISTINA LEWIS** <br> *Plaintiffs*, <br><br> **v.** <br><br> **BOROUGH OF CONSHOHOCKEN, ET AL.** <br> *Defendants*. | **CIVIL ACTION NO. 25-5257** |

**MEMORANDUM**

**Baylson, J.**                                                                **June 16, 2026**

## I.    INTRODUCTION

This action was brought by Plaintiffs, Richard and Christina Lewis ("Plaintiffs"), against

Defendant Borough of Conshohocken (the "Borough" or "Defendant"), alleging the Borough

engaged in discriminatory policies and selective enforcement targeting Plaintiffs in violation of

the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. §§ 1983 and 1985, and

Pennsylvania law.  ECF 19.  For the following reasons, Defendant's Motion for Summary

Judgment is **GRANTED** on all Counts of Plaintiffs' Amended Complaint.

## II.    UNDISPUTED MATERIAL FACTS

### A.  The Neighborhood Dispute

Plaintiff Richard Lewis is a Black, mixed-race man, who previously resided at 344 E. 11th

Avenue, Conshohocken, Pennsylvania, 19428.[1]  ECF 38-1 ("Borough's SUMF"), ¶ 1; ECF 39-3

---

[1] The Borough alleges that Plaintiff Richard Lewis does not live at 344 E. 11th Avenue, Conshohocken, Pennsylvania, 19428, and moved out in 2023.  ECF 38-1 ("Borough's SUMF"), ¶ 14; ECF 41 ("Borough's Response"), ¶ 66.  Plaintiff Richard Lewis alleges that he and his wife made a temporary move to an apartment in Philadelphia to escape the racial targeting and harassment but intend to return to 344 E. 11th Avenue, Conshohocken, Pennsylvania, 19428.  ECF 39-3, ¶ 14 ("Plaintiffs' Response").  The Court finds that this dispute is not material.

("Plaintiffs' Response"), ¶ 1.[2]   Plaintiff Christina Lewis is a Caucasian female woman who currently resides at 344 E. 11th Avenue, Conshohocken, Pennsylvania, 19428, and is the mother of Richard Lewis.  Borough's SUMF, ¶ 2; Plaintiffs' Response, ¶ 2.  Defendant Borough of Conshohocken is a municipality located in Montgomery County, Pennsylvania.  Borough's SUMF, ¶ 3; Plaintiffs' Response, ¶ 3.

Plaintiffs were engaged in an ongoing dispute with certain neighbors that lived along the 300 E. 11th Avenue block, namely Dan Scheinman, Kristen Scheinman, Stefanie Smith, and Colleen Leonard ("Those Certain Neighbors").  Borough's SUMF, ¶ 4; Plaintiffs' Response, ¶ 4. This dispute generally pertained to the alleyway behind the homes on the 300 E. 11th Avenue block ("the Alley").  Borough's SUMF, ¶ 5; Plaintiffs' Response, ¶ 5.

### B.  The Police Get Involved

Beginning in January 2023,[3] the Conshohocken Police Department ("CPD") started receiving calls regarding the neighbor dispute.  Borough's SUMF, ¶ 5; Plaintiffs' Response, ¶ 5; see also ECF 36-3, Exhibit B ("CPD Reports").  Over the next year and a half, CPD received numerous calls from neighbors, including Plaintiffs, regarding alleged speeding, harassment, and parking in a manner to impede traffic through the Alley either with cars or with trashcans, cones and speed bumps.  Borough's SUMF, ¶ 6; Plaintiffs' Response, ¶ 6.  For example, Those Certain Neighbors accused Plaintiffs of speeding through the Alley, while Plaintiffs called regarding Those

---

[2] Plaintiffs include their response to the Borough's SUMF and their own additional material facts in one document (see ECF 39-3).  This Court will delineate which facts are which by "Plaintiffs' Response" and "Plaintiffs' SUMF."

[3] Plaintiffs allege this conduct started back in June of 2020 (see Plaintiffs' Response, ¶ 18), after Plaintiffs displayed a "Black Lives Matter" sign on their front lawn, following which Plaintiff Richard Lewis' Brazilian wife, while driving down the Alley and listening to Spanish music, was allegedly chased by one of the neighbors.  Plaintiffs' Response, ¶ 18; Plaintiffs' SUMF, ¶ 39.  However, the Borough alleges this case regards conduct beginning in January 2023. Borough's SUMF, ¶¶ 5–6.  In any event, the Court finds that this is not material.

Certain Neighbors' parking and speed bumps,[4] which created a "serpentine" in the Alley.  ECF 39-3, ¶ 33 ("Plaintiffs' SUMF"); ECF 41, ¶ 33 ("Borough's Response").

In responding to the numerous calls, CPD officers conducted investigations regarding the complaints, including attempting to drive down the Alley when cars were parked in a way that blocked the alley.  Plaintiffs' SUMF, ¶¶ 33; Borough's Response, ¶¶ 33, 47; see generally CPD Reports.  CPD Officers also tried to mediate the disputes by asking Plaintiffs and other neighbors to move their cars, and neighbors to remove self-made speed bumps and trashcans.  Plaintiffs' SUMF, ¶¶ 33; Borough's Response, ¶¶ 33, 47; Borough's SUMF, ¶ 10; Plaintiffs' Response, ¶ 10; see also CPD Reports; ECF 38-2, Exhibit F ("Lennon Deposition"), at 30:2-3, 35:23-24, 37:14-15, 64:19-22, 72:9-12, 73:6-11.  Notably, in at least one of these complaints to which CPD officers responded, the dispute involved profane language and aggressive gesturing.  Borough's SUMF, ¶ 7; Plaintiffs' Response, ¶ 7; CPD Reports at 13–14.

For instance, on October 2, 2023, Colleen Leonard called CPD, accusing Plaintiff Richard Lewis of speeding in the Alley at approximately 35 miles per hour.  Borough's SUMF, ¶¶ 9, 17; Plaintiffs' Response, ¶ 9, 17; CPD Reports at 18–22.  CPD determined that Plaintiff was not speeding and was only traveling 13 to 14 miles per hour, based on the officers' review of video footage.  Borough's SUMF, ¶¶ 9, 17; Plaintiffs' Response, ¶ 9, 17; CPD Reports at 18–22.  CPD officers explained to the neighbors that Plaintiff Richard Lewis was not at fault and Plaintiff Richard Lewis was the harassed party.  Borough's SUMF, ¶¶ 9, 17; Plaintiffs' Response, ¶ 9, 17; CPD Reports at 18–22.  In response, Colleen Leonard "stated she was getting angry (at the police)" and that "[she] would not be saying anything further, other than she did not agree that the speed

---

[4] Neighbor Quac Ngo, who is Asian and not one of Those Certain Neighbors, also reported that he installed speed bumps in the Alley.  See CPD Reports at 5.

was as low as 13–14 mph." Borough's SUMF, ¶¶ 9, 17; Plaintiffs' Response, ¶ 9, 17; CPD Reports at 18–22. Those Certain Neighbors further noted they "were not satisfied with the police." Borough's SUMF, ¶¶ 9, 17; Plaintiffs' Response, ¶ 9, 17; CPD Reports at 18–22. CPD officers stated that although Plaintiff Richard Lewis was harassed, "all parties should be charged with harassment." Borough's SUMF, ¶¶ 9, 17; Plaintiffs' Response, ¶ 9, 17; CPD Reports at 18–22.

Moreover, on July 20, 2024, Officer Xavier Perez responded to a call regarding a disturbance in the Alley. Borough's SUMF, ¶ 12; Plaintiffs' Response, ¶ 12; CPD Reports at 32–33. Officer Perez asked Plaintiff Richard Lewis to move his car or else he would be ticketed. Borough's SUMF, ¶ 12; Plaintiffs' Response, ¶ 12; CPD Reports at 32–33. In response, Plaintiff Richard Lewis refused to move his car and claimed that he believed that some of the neighbors were racist as they said, "get out of here, this isn't your neighborhood." Borough's SUMF, ¶ 13; Plaintiffs' Response, ¶ 13; CPD Reports at 32–33.[5] Accordingly, Officer Perez issued him a parking citation, which Officer Perez later sought to dismiss at a summary trial. Borough's SUMF, ¶ 12; Plaintiffs' Response, ¶ 12; CPD Reports at 32–33; see also ECF 19-4, Summary Trial Transcript; ECF 39-9, Exhibit 5. Officer Perez, who is Latino, told Plaintiff Richard Lewis that, as a minority, he did not feel that the comment was racial but did advise Those Certain Neighbors that their statement could "be easily perceived as a racial comment." Borough's SUMF, ¶ 15; Plaintiffs' Response, ¶ 15; see also ECF 36-8, Exhibit G ("Perez Deposition") at 21:15–23:9.[6]

---

[5] Plaintiff Richard Lewis alleges Those Certain Neighbors' racially charged comments were not isolated and that he was repeatedly told that he "doesn't belong here." Plaintiffs' Response, ¶ 13. Plaintiff further alleges Those Certain Neighbors engaged in a course of race-based harassment, including chasing his Brazilian wife down the Alley and saying she could not speak or understand English. Plaintiffs' Response, ¶ 13. The Court finds, however, that this is not material as to whether the Borough engaged in discriminatory policies and selective enforcement based on race.

[6] In responding to this disturbance, Officer Perez stated, "I don't give a fuck," "this isn't a black issue," "this is not about the black card," and "I hate when people would do this." ECF 39-5, Exhibit 1 ("Perez Internal Interview") at

However, the disputes evolved to the point that Plaintiffs and Those Certain Neighbors installed video cameras, videotaping one another and the CPD officers who responded to the calls or patrolled the area.  Borough's SUMF, ¶ 11; Plaintiffs' Response, ¶ 11; CPD Reports at 3, 18–21, 24, 34–35.  Plaintiffs and Those Certain Neighbors also began providing CPD officers with the video footage of when the CPD officers responded to the complaints.  Borough's SUMF, ¶ 11; Plaintiffs' Response, ¶ 11; CPD Reports at 3, 18–21, 24, 34–35.

### C.  The Directive

On July 24, 2024, following the numerous calls regarding the Alley, CPD Chief David Lennon issued a memorandum ("the Directive") directing officers to patrol the Alley twice a day and cite any vehicle parked in violation of Borough Ordinance § 15-1101.[7]  Borough's SUMF, ¶ 19; Plaintiffs' Response, ¶ 19; see also ECF 36-6, Exhibit E ("Enforcement Memo").  The Ordinance states:

> It shall be unlawful for any motor vehicle to park or to remain parked in an alleyway within the Borough of Conshohocken if such vehicle is parked in such manner as to impair or impede the clear passage of emergency vehicles and/or if such vehicle is parked in such manner as to reduce the clear drive aisle of the alleyway to less than ten (10) feet in width.

Borough's Response, ¶ 45; Enforcement Memo at 2 (citing Borough Ordinance § 15-1101).

The Directive stated, in relevant part:

> Effective July 25, 2024, and until further notice, a minimum of two patrols (one dayshift and one nightshift) will be performed in the alleyway of the 300 blk of East

---

10, 16.  Officer Perez acknowledged he meant this as "pull the black card" and that this was not the way a police officer is expected to speak to a resident.  Id.; see also ECF 39-6, Exhibit 2.

[7] Chief Lennon did not conduct any investigation or measurements of the Alley or emergency vehicles before issuing the Directive, nor did he consult with the Borough Solicitor.  Plaintiffs' SUMF, ¶ 47; Borough's Response, ¶ 47; Lennon Deposition at 26:6-17, 54:21-24, 55:1-5, 69:7-16.  Chief Lennon was not required to consult with the Borough Solicitor to issue the Directive, as consulting with the Borough Solicitor is the procedure for enacting laws and/or ordinances, and Municipal Code § 15-1101 was already a valid ordinance when he issued the Directive.  Borough's Response, ¶ 47; Lennon Deposition at 5:15-20, 8:13-24.  In any event, the Court finds these facts are not material.

11th/ East 12th avenue. Each check of the alleyway will be documented in a written report noting any vehicles that are blocking the alleyway.

Vehicles that are observed parked in the alleyway SHALL be ticketed with a parking citation issued from digital handheld enforcement device including a picture of the violation.

Vehicles in violation: are any vehicle parked within the alleyway. Vehicles parked in parking areas on private property to the rear of homes that are not in alleyways should not be cited.

Enforcement Memo at 2. The Directive specifically applied to the Alley and contained a carve-out for private parking pads. Borough's SUMF, ¶ 19; Plaintiffs' Response, ¶¶ 19–20; Enforcement Memo at 2. The Directive did not apply to other alleyways in the Borough, despite the existence of similar alleyways and parking conditions elsewhere in the Borough. Plaintiffs' SUMF, ¶ 46; Borough's Response, ¶ 46.

Prior to the Directive, enforcement was lenient and discretionary, and the custom was not to ticket vehicles in the Alley unless they physically blocked the Alley or blocked emergency vehicles from being able to pass through the Alley. Plaintiffs' SUMF, ¶ 49; Borough's Response, ¶ 49; Perez Deposition at 11:6–12:6, 16:1–16. However, the Directive required a stricter, mandatory enforcement of the Ordinance. Borough's SUMF, ¶¶ 21–22; Plaintiffs' Response, ¶¶ 21–22; Lennon Deposition at 25:5–23, 93:8–21. In issuing the Directive, Chief Lennon's concern was that vehicles or other items blocking the Alley would create a safety hazard as emergency vehicles would not be able to safely pass through the narrow alleyways. Borough's SUMF, ¶ 20; Plaintiffs' Response, ¶ 20.[8]

---

[8] Plaintiffs assert that Chief Lennon issued the Directive out of anger to specifically target the Alley and the Lewis Family. Plaintiffs' Response, ¶ 20. However, Plaintiffs' allegations are speculative and based upon conjecture.

Between July 20, 2024, and October 21, 2024, 14 parking citations were issued in the Alley. Borough's SUMF, ¶ 23; Plaintiffs' Response, ¶ 23; ECF 36-9, Exhibit H.[9] Plaintiff Richard Lewis received at least 3 of those citations, as well as a May 2023 citation for disorderly conduct. Borough's SUMF, ¶ 24; Plaintiffs' Response, ¶ 24; Plaintiffs' SUMF, ¶ 54; Borough's Response, ¶ 54; CPD Reports at 13–14.  Plaintiff Christina Lewis received 6 of the 14 citations.  Borough's SUMF, ¶ 25; Plaintiffs' Response, ¶ 25; ECF 36-9.  Francis ("Frank") Messmer, a Caucasian male neighbor, was also cited 3 times, and Plaintiffs paid for Frank Messmer's parking tickets. Borough's SUMF, ¶ 26; Plaintiffs' Response, ¶ 26; see also ECF 36-9.  The citations called for a maximum fine of $15.00 per citation.  Borough's SUMF, ¶ 27; Plaintiffs' Response, ¶ 27.   Other residents received fewer citations than Plaintiffs, despite engaging in similar parking conduct. Plaintiffs' SUMF, ¶ 53; Borough's Response, ¶ 53.

On December 10, 2024, Plaintiffs challenged the citations in a magisterial district court proceeding.  Borough's SUMF, ¶ 28; Plaintiffs' Response, ¶ 28; see also ECF 19-4.  At the proceeding, most of the citations were withdrawn and/or dismissed, and the court entered a finding of guilt on one (1) citation as to each Plaintiff.  Borough's SUMF, ¶ 29; Plaintiffs' Response, ¶ 29; see also ECF 19-4.  Plaintiffs appealed the remaining citations.  Borough's SUMF, ¶ 30; Plaintiffs' Response, ¶ 30.  On appeal, the Montgomery Court of Common Pleas dismissed the remaining citations on the basis that the violation had not conclusively been established.  Borough's SUMF, ¶ 30; Plaintiffs' Response, ¶ 30; see also ECF 19-5, Summary Appeal Transcript.

---

[9] Prior to issuing citations, CPD officers did not measure the Alley and instead relied on the "eyeball method" to measure the Alley and conduct speed tests.  Plaintiffs' SUMF, ¶¶ 55, 57; Borough's Response, ¶¶ 55, 57; Perez Deposition at 51:24–53:23.  Prior to the Summary Appeal Hearing, the Fire Department Battalion Chief and the CPD Chief measured the Alley.  Plaintiffs' SUMF, ¶ 59; Borough's Response, ¶ 59; Lennon Deposition at 13:23–24, 14:1–3, 50:6–20.  The Alley is over 20 feet wide.  Plaintiffs' SUMF, ¶ 34; Borough's Response, ¶ 34.

### III.     PROCEDURAL HISTORY

On September 12, 2025, Plaintiffs filed a Complaint (ECF 1) against the Borough, the CPD, Chief Lennon, other CPD police officers, and two lawyers from the firm that serves Conshohocken's outside Solicitor, alleging they engaged in discriminatory policies and selective enforcement targeting Plaintiffs in violation of the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. §§ 1983 and 1985, and Pennsylvania law.

Following a Fed. R. Civ. P. 16 Conference on December 2, 2025 (ECF 16), Plaintiffs filed an Amended Complaint on December 8, 2025, naming only the Borough of Conshohocken as a defendant. ECF 19. On April 15, 2026, the Borough filed a Motion for Summary Judgment. ECF 35. Plaintiffs opposed the Motion on April 29, 2026. ECF 39. Defendant filed a reply brief on May 6, 2026. ECF 40.

### IV.     LEGAL STANDARD – SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the

moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## V.   COUNT I – § 1983 14TH AMENDMENT EQUAL PROTECTION BY RICHARD LEWIS

In Count I, Plaintiff Richard Lewis brings a claim under § 1983 for violations of the Equal Protection Clause of the Fourteenth Amendment. See ECF 19.

### A. Defendant's Contentions (ECF 35; ECF 40)

The Borough argues under Monell, Plaintiff has not proven this claim.[10] ECF 35-1 at 8–11. Defendant first contends Plaintiff has failed to establish an underlying constitutional violation (but does not explicitly state what constitutional violation Plaintiff fails to establish). Id. at 10. Second, Defendant argues there is no unconstitutional custom, policy, or procedure, as the only "policy" is Chief Lennon's July 2024 Memo ("the Directive") instructing officers to enforce the Ordinance within the alleyway. Id. at 10–11. The Borough contends the Directive instructing officers to enforce valid parking ordinances and cite those in violation is not facially unconstitutional. Id. Moreover, the Borough argues the application of the Directive did not have a discriminatory intent or effect. Id. Although Plaintiff asserts enforcement of the Directive specifically targeted him as a member of a suspect class based on his race, Plaintiff also asserts the

---

[10] The Borough addresses this claim with the selective enforcement claim. See ECF 35-1 at 5–11.

Directive targeted his neighbor, a Caucasian man, who also parked within the Alleyway and received citations.  Id.  Furthermore, Plaintiff Richard Lewis received three (3) of the fourteen (14) citations issued between July and October 2024, and the other 11 tickets were issued to other residents who are majority, if not all, Caucasian.  Id.

Defendant also contends there is no evidence of deliberate indifference by the Borough to an alleged problem by overlooking deficiencies or engaging in repeated actions that violated the constitutional rights of its citizens based on race.  Id. at 11.  Defendant argues Plaintiff cannot point to any prior unequal enforcement of the Ordinance among Conshohocken residents.  Id.  Additionally, the Borough argues Plaintiff cannot point to any prior incident where CPD or the Borough engaged in racially motivated action, much less "a pattern of prior incidents or knowledge of similar violations of constitutional rights."  Id.

### B.  Plaintiff's Contentions (ECF 39)

Plaintiff does not address the Borough's argument of a lack of a constitutional violation, but simply says there was one in stating that the Directive was the "moving force" behind the constitutional violation.  ECF 39 at 3–4, 13–14.  Plaintiff contends the alleged unconstitutional conduct is directly attributable to an official action.  Id. at 13.  Plaintiff argues the written Directive constitutes an official policy because it was issued by the Chief of Police as a department-wide mandate, and officers were mandated to follow it.  Id. at 12–13.  Plaintiff further argues Chief Lennon possessed final policymaking authority because he did not consult with Borough solicitors before issuing the Directive, and his decision to issue and enforce the Directive was not subject to review or supervision by another municipal policymaker.  Id. at 13.  Plaintiff argues Chief Lennon was "clearly aware of the discriminatory effect of the Directive due to the long history of lack of enforcement in all of the alleyways in Conshohocken, the allegations of racial discrimination, and

the unlawful nature of the speedbumps in the Alley." Id.  But Plaintiff then argues there is a question of fact as to whether Chief Lennon possessed final policymaking authority over parking enforcement.  Id.

Plaintiff next argues the Directive was the "moving force" behind the constitutional deprivation.  Id. at 13–14.  Plaintiff argues that before the Directive, enforcement in the alleyway was discretionary and sporadic, and afterwards, enforcement became mandatory and intensive.  Id. at 14.  Plaintiff contends there is a sequential and causal relationship here, as complaints of race-based harassment were made to the Borough, the Directive was subsequently implemented, and then there was an increase in citations.  Id.  Plaintiff argues the shift in enforcement corresponds to the issuance of the Directive.  Id.

Plaintiff argues there is evidence of deliberate indifference and discriminatory selection. Id. at 14–15.  To establish an Equal Protection Clause violation through selective enforcement related to a Monell claim, a plaintiff must show that "the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects. Intentional discrimination can be inferred from a defendant's 'deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights.'"  Id. at 14 (citing Wayte v. United States, 470 U.S. 598, 610 (1985); Chambers v. Sch. Dist. of Phila. Bd. of Educ., 827 F. Supp. 2d 409, 422 (E.D. Pa. 2011) (Pratter, J.)).  Plaintiff argues the Borough was aware of racial harassment allegations and enforcement concerns before the Directive was issued, as Plaintiff Richard Lewis reported racial harassment to Officer Perez in February 2023 and to the Borough in September 2023.  Id. at 14–15.  Despite this, Plaintiff contends Chief Lennon issued the Directive without investigating the allegations or measuring the demographic composition of the Alley's users, demonstrating selective application.  Id. at 15.

11

Furthermore, Plaintiff argues there was selective application and deliberate indifference because the Directive contained a carveout for private parking pads, which was a selective carveout benefiting only those Certain Neighbors because the Lewis Family's property does not have one. Id.  Plaintiff contends the concentrated citations followed by later dismissals and withdrawals suggest that enforcement was not driven by legitimate parking concerns.  Id.  Plaintiff argues that the failure to conduct measurements and investigate before mandating enforcement constitutes deliberate indifference to the likelihood that enforcement would result in a violation of federally protected rights.  Id.  Plaintiff contends these facts support an inference that the Directive was adopted with deliberate indifference to the risk of discriminatory impact.  Id.

Lastly, Plaintiff argues the pattern requirement is satisfied or inapplicable.  Id. at 15–16. Plaintiff argues that when a municipality directly promulgates a policy that violates constitutional rights, the need to demonstrate a pattern of prior similar violations is substantially diminished.  Id. Plaintiff contends the policy itself (here, the Directive) is the official action that caused the violation.  Id. (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988)).  Alternatively, Plaintiff argues there is evidence of a pattern where multiple citations were issued pursuant to the Directive, and enforcement intensity was sustained over time.  Id. at 16.

## C. Discussion

For a § 1983 Equal Protection action, a plaintiff must show "a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008).  Section 1983 is not in itself a source of substantive rights but instead provides a remedy for violations of rights protected by other federal statutes or by the U.S. Constitution.  City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).  To bring a § 1983 Equal Protection claim based upon

12

membership in a protected class (here, race), plaintiffs must prove purposeful ("intentional") discrimination. Hassan v. City of New York, 804 F.3d 277, 294 (3d Cir. 2015), as amended (Feb. 2, 2016). Accordingly, a plaintiff must demonstrate (1) he or she is a member of a protected class, (2) the government treated similarly situated individuals outside of the protected class differently, and (3) the disparate treatment was based on membership in the protected class. Kasper v. Cnty. of Bucks, 514 F. App'x 210, 214 (3d Cir. 2013) (nonprecedential); see also Keenan v. City of Phila., 983 F.2d 459, 465 (3d Cir. 1992); Kuhar v. Greensburg–Salem School Dist., 616 F.2d 676, 677 n.1 (3d Cir. 1980) (plaintiff must demonstrate that he "receiv[ed] different treatment from that received by other individuals similarly situated").

In addition, when a § 1983 claim is asserted against a municipality, a plaintiff must show that the government official was acting pursuant to a municipal policy or custom. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). The municipality is liable when either the policy or custom facially violates the Constitution, or if not unconstitutional itself, is the "moving force" behind the constitutional violation. Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014). On the other hand, for a failure to train theory, a plaintiff has the "separate, but equally demanding requirement of demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality." Forrest v. Parry, 930 F.3d 93, 106 (3d Cir. 2019). There must be a showing that "a municipal actor disregarded a known or obvious consequence of his action." Hightower v. City of Phila., 130 F.4th 352, 357 (3d Cir. 2025) (internal quotations omitted). In other words, a plaintiff must show that "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently

cause deprivation of constitutional rights." Est. of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (quoting Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999)).

This Court agrees with the Borough that Plaintiff has failed to allege a constitutional violation. ECF 35-1 at 10; Phillips, 515 F.3d at 235 (plaintiff must show "a deprivation of a constitutional right"). Neither party explicitly outlines what the constitutional violation is here: Plaintiff just states that there was one (see ECF 39 at 14 ("The Directive was therefore the moving force behind the constitutional deprivation."); see also ECF 19, ¶ 74 ("Richard Lewis suffered a deprivation of his constitutional right to equal protection under the law")) and the Borough states there was not one (see ECF 35-1 at 10 ("Since Plaintiff has failed to establish an underlying constitutional violation as established above, Plaintiff's Monell claim fails.")).[11]

Even assuming the constitutional violation was a denial of equal protection of the laws under the Fourteenth Amendment, Plaintiff has failed to prove purposeful discrimination. Plaintiff is a member of a protected class, because he is mixed-race / Black. See Borough's SUMF, ¶ 1; Plaintiffs' SUMF, ¶ 1. However, Plaintiff has not shown that similarly situated individuals outside of the protected class were treated differently. See ECF 35-1 at 6–7; Harvard v. Cesnalis, 973 F.3d 190, 205 (3d Cir. 2020) ("Persons are similarly situated under the Equal Protection clause when they are alike 'in all relevant respects.'"). Here, the most similarly situated persons are Plaintiff Christina Lewis and Frank Messmer, who are both Caucasian, but Plaintiff cannot show that they

---

[11] Plaintiff later argues that "[t]his cumulative burden, combined with the apparent design to restrict Plaintiffs' use of part of their property and the Alley, presents a question of fact regarding whether the totality of circumstances constituted a seizure under the Fourth Amendment or the right to be free from excessive penalties under the Eighth Amendment." ECF 39 at 23. Even considering these as potential constitutional violations, Plaintiff has failed to establish these as a matter of law. As discussed below in Part VIII, Plaintiff cannot show his parking citations were a seizure for purposes of malicious prosecution. Moreover, despite Plaintiff's citations to Pimentel v. City of Los Angeles, 115 F.4th 1062 (9th Cir. 2024) and Timbs v. Indiana, 586 U.S. 146 (2019), he does not explicitly argue his parking citations were excessive penalties in violation of the Eighth Amendment. ECF 39 at 22.

were treated differently.  ECF 35-1 at 6–8; ECF 39 at 3, 9–10; Borough's SUMF, ¶¶ 2, 21–26; Plaintiffs' Response, ¶¶ 2, 21–26; see also ECF 39-9, Exhibit 5.  As the Borough stated—and the Court agrees—the relevant inquiry is not the purported frequency of citations, but whether individuals outside of the protected class engaged in the same behavior but were "intentionally treated differently" and "there was no rational basis for such treatment."  ECF 35-1 at 6–8; ECF 40 at 3–5; Harvard, 973 F.3d at 205.  Plaintiff only offers conclusory allegations that the Borough acted based on race and/or enforcement of the Ordinance was for a discriminatory purpose, including that "Those Certain Neighbors" parked in similar manner and did not receive citations. ECF 35-1 at 7–8; ECF 39 at 5–9; Plaintiffs' SUMF, ¶¶ 20, 53; Borough's Response, ¶ 53.  Any perceived enforcement disparities were solely based on the officers' observations from patrolling the area.  ECF 35-1 at 7–8; Borough's SUMF, ¶¶ 21–26; Plaintiffs' Response, ¶¶ 21–26; ECF 36-9; see also ECF 39-6 (Plaintiffs "continued to park in the alleyway despite multiple citations while other residents have taken corrective action").

Third, Plaintiff has failed to identify an unconstitutional policy.  ECF 35-1 at 10–11; ECF 39 at 3–4, 12–14.  Plaintiff argues the Directive was an unconstitutional policy.  ECF 39 at 12–13. But the Directive instructing officers to enforce parking ordinances and cite those in violation is not unconstitutional, as it was facially neutral and did not explicitly target Plaintiffs by name.  ECF 35-1 at 10–11; Borough's SUMF, ¶¶ 19–22; Plaintiffs' Response, ¶¶ 19–22; see also Enforcement Memo at 2; Perez Deposition at 11:6–12:6, 16:1-16; Lennon Deposition at 25:5-23, 93:8-21.  And, despite Plaintiff's arguments, the application of such policy did not have a discriminatory intent or effect.  ECF 35-1 at 10–11; Borough's SUMF, ¶¶ 21–26; Plaintiffs' Response, ¶¶ 21–26; Plaintiffs' SUMF, ¶¶ 46, 53; Borough's Response, ¶¶ 46, 53; ECF 36-9.  The Directive not only targeted Plaintiff but also targeted his Caucasian mother (Plaintiff Christina Lewis) and other

Caucasian neighbors who parked in the Alley and received citations.  ECF 35-1 at 10–11; Borough's SUMF, ¶¶ 23–26; Plaintiffs' Response, ¶¶ 23–26; ECF 36-9.

Moreover, Plaintiff has failed to establish deliberate indifference.  ECF 35-1 at 11.  As Plaintiff cannot establish a constitutional violation in the first instance, he cannot show there was a pattern of such violations.  Id. at 10.  Even if the Borough was on notice of racial harassment allegations, Plaintiff has not shown there was a prior pattern of unequal enforcement of the Ordinance or enforcement of the Ordinance based on race, such that "municipal policymakers [would] know that employees will confront a particular situation," or that "the situation involves … a history of employees mishandling."  Est. of Roman, 914 F.3d at 798.

Accordingly, the Court will **GRANT** Defendant's Motion as to Count I.

## VI.    COUNT II – § 1983 14TH AMENDMENT SELECTIVE ENFORCEMENT BY RICHARD LEWIS

Plaintiff Richard Lewis next brings a claim under § 1983 for selective enforcement as a violation of the Equal Protection Clause of the Fourteenth Amendment.  See ECF 19.

### A.  Defendant's Contentions (ECF 35)

Defendant contends Plaintiff fails to identify similarly situated individuals who he believes to have been treated differently, because Plaintiff was treated the same as every other person who parked his vehicle in the alleyway—he was ticketed.  ECF 35-1 at 6–7.  Defendant argues Plaintiff points to perceived enforcement disparities but offers no evidence that similarly situated comparators were treated more favorably.  Id. at 7.  Plaintiff alleges he was treated differently than his similarly situated white neighbors with the enforcement of the Ordinance, but the Borough contends Plaintiff provides no evidence to indicate they were similarly situated and were treated differently.  Id.  Defendant argues the most similarly situated persons are Plaintiff Christina Lewis,

16

who is Caucasian, and she received the same parking citations that Plaintiff Richard Lewis received, as well as Francis ("Frank") Messmer, who is also Caucasian and received the same number of parking tickets as Plaintiff Richard Lewis received. Id. at 7–8. The Borough contends that even if the similarly situated people were "Those Certain Neighbors" (*i.e.,* Stefanie Smith, Dan Scheinman, Kristen Scheinman, and Colleen Leonard), Plaintiff offers only conclusory statements that any of them parked in similar manner and did not receive citations. Id. at 7.

Defendant also contends that the perceived selective treatment was not based on an unjustifiable standard. Id. at 8. Defendant argues there is no evidence that the Borough acted based on an impermissible consideration or that the enforcement of the Ordinance was for a discriminatory purpose. Id. Specifically, there is no indication that any individual was targeted due to race, as, for example, Frank Messmer (who is Caucasian) also received three (3) parking citations, just like Plaintiff. Id. Defendant contends "mere unequal treatment or adverse effect is insufficient to support an equal protection selective enforcement claim." Id. (citing Jewish Home of E. Pa. v. Ctrs. for Medicare & Medicaid Servs., 693 F.3d 359, 363 (3d Cir. 2012)). Additionally, as discussed above, the Borough argues under Monell, Plaintiff's claims fail because he cannot show a constitutional violation. Id. at 8–10.

### B. Plaintiff's Contentions (ECF 39)

In response, Plaintiff argues there is significant circumstantial evidence that shows a targeted geographic focus and a departure from normal enforcement practice. ECF 39 at 5–6. Plaintiff argues prior to the Directive, enforcement was lenient, but the Directive mandated heightened enforcement in a specific alleyway. Id. at 6. Chief Lennon also indicated that he had never issued such a targeted Directive. Id. Plaintiff argues targeting a specific alleyway where Plaintiffs reside, rather than applying the Ordinance uniformly across the Borough, constitutes a

significant departure from the historical, lenient enforcement pattern and from normal substantive standards, and is probative of discriminatory purpose. Id. Plaintiff contends the "concentrated burst of citations" directed at Plaintiffs following the issuance of the Directive is "consistent with a pattern of selective enforcement motivated by discriminatory purpose rather than neutral law enforcement objectives." Id. at 7. Plaintiff argues the sequence of events supports an inference of pretext and discriminatory motivation. Id.

Plaintiff further argues Chief Lennon admitted that he did not conduct any investigation or measurements of the alleyway or emergency vehicles before issuing the Directive, and Officer Perez admitted that he did not measure the alley width before issuing citations and relied on visual observation. Id. Plaintiff suggests the enforcement action was not motivated by genuine concern about parking violations but rather by a predetermined objective to cite Plaintiffs, because a neutral enforcement decision would ordinarily be grounded in objective investigation and measurement. Id. at 7–8. Plaintiff also contends race-related statements were made by neighbors, and Officer Perez's dismissal of race concerns, rather than investigation or documentation, suggests indifference to racial discrimination in enforcement. Id. at 8. Plaintiff argues the context of these statements, which occurred in the same neighborhood where the enforcement was concentrated, provides circumstantial evidence of a discriminatory environment and supports an inference that the enforcement action may have been influenced by racial animus. Id. Plaintiff contends the Borough has taken an inconsistent jurisdictional stance as to enforcement of ordinances in alleyways, which also supports an inference of pretext. Id. at 8–9.

Next, Plaintiff argues he can establish discriminatory effect through multiple categories of comparators. Id. at 9. Plaintiff argues his family and his neighbors who parked in the alleyway before July 2024 did so without citation for decades, and prior lenient enforcement establishes that

the Lewis Family was treated differently under the Directive than they would have been previously.  Id. at 9–10.  Plaintiff further contends other residents who parked in the alleyway after July 2024 received fewer citations than the Lewis Family.  Id.  Plaintiff argues that this different treatment establishes discriminatory effect.  Id.  Plaintiff speculates that enforcement was targeted because "if other alleyways in the Borough had similar parking conditions but were not subjected to the same Directive, this demonstrates that the enforcement decision was selective and not uniformly applied."  Id. at 10.  Plaintiff argues the Borough created the similarly situated comparators, as the Directive was intended to control the behavior of Plaintiffs and those Certain Neighbors.  Id.  Plaintiff concedes that "the Memo could be read to apply to all cars located in the Alley," including cars owned by those Certain Neighbors and by the Lewis Family, but Plaintiff then argues that Plaintiffs were ticketed, and those Certain Neighbors were not.  Id.

In responding to the Borough's arguments, Plaintiff contends that selective enforcement can exist even when non-protected persons are also cited, because the relevant inquiry is whether similarly situated non-protected persons were cited "at the same rate or with the same intensity" as Plaintiffs.  Id. at 10–11.  Plaintiff argues the Lewis Family was cited at a greater intensity, and this differential treatment demonstrates selective enforcement based on race, even though Plaintiff concedes that some non-protected persons, including Plaintiff Christina Lewis, were also cited. Id. at 11.  Plaintiff argues this "does not negate the discriminatory purpose" and "[m]ixed-race households and families remain protected under the Equal Protection Clause."  Id.

Lastly, Plaintiff argues there are genuine disputes of material fact regarding discriminatory purpose, intent, pretext, *mens rea*, and credibility that preclude summary judgment.  Id. at 11–12.

### C. Defendant's Reply (ECF 40)

On reply, the Borough argues in attempting to identify a proper comparator, Plaintiff argues the "relevant inquiry is not whether any non-protected persons were cited, but whether similarly situated non-protected persons were cited at the same rate or with the same intensity as Plaintiffs." ECF 40 at 3; see ECF 39 at 11. Plaintiff cites Hinton v. Houser, No. 1:22-CV-00554, 2025 WL 2803773 (M.D. Pa. Sept. 30, 2025), but the Borough argues that case does not stand for the proposition that Plaintiff argues it does. ECF 40 at 3. Defendant argues there is no "same rate" or "same intensity" standard for determining whether individuals are similarly situated, but rather "alike in all relevant respects" does not mean "identically situated." Id.; Hinton, 2025 WL 2803773, at *27 (citing Harvard, 973 F.3d at 205).

Defendant argues the relevant inquiry is not the purported speed at which tickets were issued, but whether individuals outside of Plaintiff's protected class engaged in the same behavior but were "intentionally treated differently from others similarly situated … and that there was no rational basis for such treatment." ECF 40 at 3; Hinton, 2025 WL 2803773, at *27 (citing Phillips, 515 F.3d at 243). Here, Plaintiff alleges only an "acceleration" by the "rate of ticketing" and does not identify any proper comparators that he was treated differently from. ECF 40 at 4. The Borough contends alleged acceleration is "wholly unrelated" to whether Plaintiff has identified similarly situated individuals, and Plaintiff Christina Lewis received parking tickets at the same rate of speed as Plaintiff. Id.

### D. Discussion

For a selective enforcement claim based on a facially valid law, a plaintiff must show he was (1) treated differently from other, similarly situated persons and (2) that this selective treatment was based on an unjustifiable standard, such as race, religion, or some other arbitrary

factor or to prevent the exercise of a fundamental right.  Jewish Home, 693 F.3d at 363.  Thus, there must be evidence of discriminatory purpose, not mere unequal treatment or adverse effect. Id. (citing Snowden v. Hughes, 321 U.S. 1, 8 (1944)).

As discussed in Part V.C, Plaintiff fails to identify similarly situated individuals who he believes were treated differently.  ECF 35-1 at 6–7.  Here, the most similarly situated persons are Plaintiff Christina Lewis and Frank Messmer, who are both Caucasian and received parking tickets.  ECF 35-1 at 7–8; Borough's SUMF, ¶¶ 23–26; Plaintiffs' Response, ¶¶ 23–26; ECF 36-9; ECF 39-9.  Plaintiff also cannot show that they were treated more favorably.  ECF 35-1 at 6–8; ECF 39 at 3, 9–10; Borough's SUMF, ¶¶ 23–26; Plaintiffs' Response, ¶¶ 23–26; Plaintiffs' SUMF, ¶ 53; Borough's Response, ¶ 53; see also ECF 36-9.  Regardless, any perceived enforcement disparities were not based on an unjustifiable standard, as Plaintiff has not shown that the Borough acted based on race or that enforcement of the Ordinance was for a discriminatory purpose.  ECF 35-1 at 8; ECF 39 at 5–9; Perez Deposition at 11:6–13:11, 16:1-16; Lennon Deposition at 25:5-23, 93:8-21; Borough's SUMF, ¶¶ 20–26; Plaintiffs' Response, ¶¶ 20–26; see also ECF 39-6 (Plaintiffs "continued to park in the alleyway despite multiple citations while other residents have taken corrective action").  Plaintiff's contentions are speculative, which is insufficient for Rule 56.

Accordingly, the Court will **GRANT** Defendant's Motion as to Count II.

## VII.    COUNT III – § 1985(3) CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS BY RICHARD LEWIS

Plaintiff Richard Lewis also brings a conspiracy claim under § 1985(3).  Plaintiff alleges the Borough's coordinated actions, through Officer Perez, Solicitor Peters, Chief Lennon, and other CPD officers, demonstrate an agreement to selectively enforce Borough ordinances against the Lewis family based on race.  See ECF 19 at 16–17.

### A. Defendant's Contentions (ECF 35)

First, because Plaintiff has failed to establish a constitutional violation, the Borough argues there can be no derivative "conspiracy." ECF 35-1 at 12–13 (citing Colbert v. Angstadt, 169 F. Supp. 2d 352, 356–57 (E.D. Pa. 2001) (Bechtle, J.)). Second, Defendant argues Plaintiff has not identified two or more people acting in concert for an unlawful purpose. Id. at 13. Defendant contends that, under the Intracorporate Conspiracy Doctrine, a municipality and its officials are considered a single entity that cannot conspire with itself. Id. (citing Doherty v. Haverford Twp., 513 F. Supp. 2d 399, 409 (E.D. Pa. 2007) (Strawbridge, M.J.); Aardvark Childcare & Learning Center, Inc. v. Twp. of Concord, 401 F. Supp. 2d 427, 450 (E.D. Pa. 2005) (Giles, J.)). Moreover, because a municipality is incapable of forming the invidious discriminatory animus required, a § 1985(3) claim is only viable if the municipality conspired with a municipal employee acting within their individual capacity. Id. (citing Suber v. Guinta, 902 F. Supp. 2d 591, 608 (E.D. Pa. 2012) (Gardner, J.)). Defendant argues because Plaintiff has only identified the Borough, a municipality, as the sole defendant here, there is no evidence of a conspiracy. Id.

### B. Plaintiff's Contentions (ECF 39)

In response, Plaintiff argues the evidence establishes a pattern of coordinated conduct among multiple actors, and these constitute overt acts in furtherance of an alleged conspiracy to deprive people of equal protection through selective, discriminatory enforcement. ECF 39 at 16–17. Plaintiff further contends the coordination across multiple departments, including police, executive, and prosecutorial, supports the inference of a meeting of minds and a common unlawful purpose. Id. at 17. In support of his argument, Plaintiff points to certain facts, including:

1. Officer Perez dismissed Richard Lewis' race complaints without investigation while concurrently enforcing citations against the Lewis Family in the same location.

2.  Chief Lennon issued the Directive regarding enforcement only in the Alley where the Lewis Family parked, which, when considered alongside the timing of subsequent actions, suggests a directive to concentrate enforcement efforts.

3.  The Borough Solicitors took inconsistent jurisdictional positions and selectively prosecuted citations, indicating coordination in the prosecutorial phase of enforcement. The Solicitor initially stated the Borough lacked jurisdiction over the Alley, yet later prosecuted citations issued in the Alley.

4.  The concentrated enforcement in a specific alleyway demonstrates that the enforcement pattern was not random or neutral but targeted to a particular location and, by inference, to the individuals or class of persons in that location.

Id. at 16–17.

Plaintiff next contends that circumstantial evidence such as discriminatory conduct, practices, and disparate impact may support the finding of discriminatory animus.  Id. at 17–18. Plaintiff argues the record supports inferences of discriminatory animus:

1.  The timing of enforcement actions followed complaints about race-based treatment, suggesting a retaliatory or discriminatory motivation.

2.  Officer Perez's dismissal of race complaints without investigation demonstrates deliberate indifference to potential constitutional violations and suggests an intent to suppress complaints rather than address them.

3.  The concentration of enforcement in a specific alleyway, combined with the selective nature of citation issuance and prosecution, creates a pattern of disparate impact that supports an inference of discriminatory purpose.

4.  The involvement of Colleen Leonard, the President of the Borough Council.

> 5. Chief Lennon's issuance of a memo that preceded or coincided with the concentrated enforcement pattern suggests a deliberate policy or directive to target enforcement, all of which a jury could infer was motivated by discriminatory animus.

Id.

Plaintiff further argues his Monell claim provides an exception to the Intracorporate Conspiracy Doctrine. Id. at 18–19. Plaintiff argues the Doctrine's protections fail when the conspiring agents are executing enacted policy that is inconsistent with the entity's purpose. Id. Plaintiff argues the municipal policy, the Directive, was, at the least, inconsistent with Borough policy, and at the worst, a violation of the law. Id. at 18. Plaintiff contends the Borough cannot be shielded here because the Directive was the root of the conspiracy and the conspirators acted in furtherance of a municipal policy that was not consistent with Borough policy. Id. at 18–19.

### C. Discussion

To state a claim under § 1985, a plaintiff must allege a conspiracy; motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of people to the equal protection of the laws; an act in furtherance of the conspiracy; and injury to person or property or deprivation of constitutional rights. Griffin v. Breckinridge, 403 U.S. 88, 102–03 (1971).

This Court agrees with the Borough that because Plaintiff has failed to establish a constitutional violation, there can be no derivative "conspiracy." Ortiz v. Ocean Cnty. Prosecutor's Off., No. CIV. 03-3732 (SRC), 2006 WL 2403946, at *6 (D.N.J. Aug. 18, 2006) (citing Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 372 (1979)); ECF 35-1 at 10, 12–13; see also Part V.C. Moreover, this Court finds that Plaintiff has not identified two or

more people acting in concert for an unlawful purpose, as he has only named the Borough as a defendant, and has not established any facts showing the Borough conspired with a municipal employee acting within their individual capacity.  ECF 35-1 at 13; see generally Plaintiffs' SUMF. Plaintiff's arguments as to showing a conspiracy here are speculative.

Thus, this Court will **GRANT** Defendant's Motion as to Count III.

### VIII.    COUNT IV – § 1983 MALICIOUS PROSECUTION BY BOTH PLAINTIFFS

In Count IV, both Plaintiff Richard Lewis and Plaintiff Christina Lewis bring malicious prosecution claims under § 1983.  See ECF 19.

#### A.  Defendant's Contentions (ECF 35; ECF 40)

Defendant first argues that Plaintiffs cannot establish a Monell claim under § 1983 because there is no evidence of a constitutional violation.  ECF 35-1 at 14.  Alternatively, the Borough argues Plaintiffs' claim fails because Plaintiffs cannot establish the elements of malicious prosecution.  Id.  First, the Borough argues no seizure has occurred.  Id. at 14–15.  Defendant argues Plaintiffs were issued citations for violating the parking ordinance, and having to defend oneself against a citation does not rise to the level of a seizure as is required for malicious prosecution.  Id. (citing Holmes v. McGuigan, 184 F. App'x 149, 151–52 (3d Cir. 2006) (nonprecedential)).  The Borough argues there was no arrest, no required bail, no conditions restricting movement, and no requirement to report to any legal proceeding.  Id.  In fact, the Borough argues that Plaintiffs initiated the proceedings when they challenged the citations.  Id.

The Borough also argues its officers had probable cause to issue the parking citations to all residents they believed to be in violation of the ordinance, and Plaintiffs provide no evidence that probable cause did not exist, other than Plaintiffs' statements that the citations were eventually withdrawn or dismissed.  Id. at 15.  Defendant contends that officers on patrol observed the

25

vehicles parked in the alleyway, determined by visual estimate that an emergency vehicle would not fit through the alleyway, and issued citations accordingly. Id. Furthermore, the Borough argues there is no evidence that the Borough or its employees acted with malice, racial animus, retaliatory motive, or discriminatory intent, and Plaintiffs merely rely on speculation and conclusory allegations of ill intent. Id. at 15–16. The officers' actions are entirely consistent with routine enforcement of parking regulations. Id.

### B. Plaintiff's Contentions (ECF 39)

In response, Plaintiffs argue there are genuine disputes of material fact for their malicious prosecution claims. ECF 39 at 19. Plaintiffs argue the issuing of parking violations started the proceedings where "Plaintiffs were forced to either plead guilty and pay the nine fines or contest the tickets in court." Id. Plaintiff Richard Lewis was issued a harassment citation that was dismissed, and Plaintiffs chose to contest each "wrongfully issued" citation. Id. Plaintiffs also contend there was a favorable result because at the lower court, Plaintiffs successfully defeated all but one violation each, and the two violations that were not defeated were appealed to the Montgomery County Court of Common Pleas and later dismissed. Id. at 19–20.

Plaintiffs next contend there is a question of fact as to probable cause. Id. at 20. Plaintiffs argue the Solicitor prosecuted an alleged violation of the Ordinance despite openly declaring that Conshohocken did not have the authority to enforce the Ordinance. Id. Therefore, Plaintiffs contend that the Solicitor's Office did not believe they had probable cause to issue the citations, but they continued to prosecute with knowledge that no probable cause existed. Id. Plaintiffs further contend circumstantial evidence supports a lack of probable cause, including the fact that many citations were subsequently withdrawn or dismissed and "[t]he post hoc nature of evidence gathering by Chief Lennon and the Fire Chief." Id. at 20–21. Moreover, the Ordinance requires

26

a 10-foot clearance for emergency access, but the officers admitted they did not measure the Alley or verify the clearance before issuing the Directive and citations.  Id. at 20.  Instead, CPD relied upon visual observations inconsistent with a violation of the Ordinance.  Id.  Plaintiffs argue where an ordinance turns on a specific, quantifiable standard, visual estimation is insufficient to establish probable cause, and failure to take the basic step of measuring the alleyway undermines any claim of probable cause.  Id. at 20–21.

Plaintiffs argue malice can be inferred from citations being issued "at a rate higher against an African American than those similarly situated."  Id. at 21.  Plaintiffs contend the "targeted Directive mandating enforcement in one specific alleyway, combined with the pattern of citations issued thereafter, supports an inference that the enforcement was not based on the neutral application of law but rather on a targeted policy directed at Plaintiffs' [sic] . . . ."  Id.  Plaintiffs argue enforcement was "disproportionate to typical enforcement and consistent with an intent to target and restrict property access rather than to enforce the ordinance neutrally."  Id. at 21–22.  Plaintiffs point to the officers' admission that they did not measure or verify the width of the Alley, the fact that the Solicitor first took the position that CPD did not have authority to enforce ordinances in the Alley, and the subsequent dismissals of the citations as evidence that the officers had knowledge or reckless disregard for the absence of probable cause.  Id.

As to deprivation of liberty, Plaintiffs argue there are factual disputes regarding whether their allegations of harassment, police interference, and intentional restrictions of movement, combined with the cumulative burden of enforcement, constitute a meaningful restraint on liberty or property interests.  Id. at 22.  While Plaintiffs concede that traffic citations alone may not constitute a seizure sufficient to support a malicious prosecution claim, Plaintiffs argue the circumstances here are different.  Id.  Plaintiffs argue the enforcement of the Directive created an

ongoing pattern of required legal proceedings and court appearances, where the Plaintiffs were forced to report to court, had their movement restricted from driving and parking in the Alley (and were confined to the front areas of the property), were forced to post a bond, had to miss work, suffered emotional distress that restricted Plaintiff Richard Lewis' everyday life, were subject to surveillance, faced fines, and were subjected to twice a day patrols in the Alley. Id. at 22–23. Plaintiffs contend the repeated required court proceedings, the necessity to retain counsel, and the targeted nature of enforcement distinguish this case from a single or isolated citation. Id. Moreover, Plaintiffs contend a seizure does not require actual physical confinement. Id. at 23.

Alternatively, Plaintiffs argue that even if the seizure element cannot be satisfied under the Fourth Amendment framework, Plaintiffs' malicious prosecution claims may proceed under a procedural due process theory, as the Borough's conduct in issuing citations without proper factual foundation and pursuing prosecution despite known deficiencies, deprived Plaintiffs of property and liberty interests without due process. Id. at 23–24.

**C. Discussion**

To establish a malicious prosecution claim under § 1983, a plaintiff must show, "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) he suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Geness v. Cox, 902 F.3d 344, 355 (3d Cir. 2018).

As discussed in Part V.C, Plaintiffs have not shown evidence of an underlying constitutional violation. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); ECF 35-1 at 10, 14. Therefore, Plaintiffs' claim fails.

Moreover, this Court finds that Plaintiffs have not established the elements of a Fourth Amendment malicious prosecution claim.[12]  ECF 35-1 at 14–16.  Specifically, the officers had probable cause to issue the citations, as officers on patrol observed the vehicles parked in the Alley, determined by visual estimate that an emergency vehicle would not fit through the Alley, and issued citations accordingly.  Id. at 15; Borough's SUMF, ¶¶ 23–26; Plaintiffs' Response, ¶¶ 23–26; Perez Deposition at 16:1–17:12, 21:7-14; Lennon Deposition at 30:14–31:11, 72:9-12, 73:3-11, 96:24–98:1; see also Enforcement Memo at 2; ECF 36-9; ECF 39-9.  The officers' actions were consistent with routine enforcement of parking regulations, and Plaintiffs' arguments are conclusory.  ECF 35-1 at 15; ECF 39 at 20–23; Borough's SUMF, ¶¶ 19–26; Plaintiffs' Response, ¶¶ 19–26; see also ECF 39-6 (Plaintiffs "continued to park in the alleyway despite multiple citations while other residents have taken corrective action").  Despite Plaintiffs' arguments, just because the citations were eventually withdrawn or dismissed does not mean that there was no probable cause to issue the citations in the first place.  ECF 39 at 4, 21; see Michigan v. DeFillippo,

---

[12] Plaintiffs raise the alternative argument that even if the seizure element cannot be satisfied under the Fourth Amendment, their malicious prosecution claims may proceed under a procedural due process theory.  Although the Third Circuit has acknowledged that a § 1983 malicious prosecution claim could be based on procedural due process under the Fourteenth Amendment, see, e.g., Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 792 (3d Cir. 2000), the Supreme Court in Parratt v. Taylor held that "a state actor's random and unauthorized deprivation of [an] interest [protected by the Due Process Clause] cannot be challenged under 42 U.S.C. § 1983 so long as the State provides an adequate postdeprivation remedy," see Albright v. Oliver, 510 U.S. 266, 284 (1994) (Kennedy, J., concurring) (citing Parratt v. Taylor, 451 U.S. 527, 535–44 (1981)).  Accordingly, because Fourteenth Amendment malicious prosecution claims must be based on a deprivation of liberty (or life or property) without due process (i.e., procedural due process), Justice Kennedy concluded in Albright that there is no "legitimacy to invoke § 1983" where the State "provides a [post-deprivation] tort remedy for malicious prosecution."  Albright, 510 U.S. at 285–86 (Kennedy, J., concurring).  But where a State does not provide a malicious prosecution tort remedy, Parratt drops out and a plaintiff can potentially pursue a § 1983 malicious prosecution claim based on the procedural component of the Due Process Clause.  See id. at 286 (Kennedy, J., concurring); see also Coulston v. City of Phila., No. CV 23-4077, 2025 WL 2377676, at *15 (E.D. Pa. Aug. 15, 2025) (**Baylson, J.**).

As this Court discussed in Coulston, 2025 WL 2377676, at *16, Pennsylvania provides a remedy for malicious prosecution, which Plaintiffs plead here.  Thus, Plaintiffs' procedural due process malicious prosecution claims are foreclosed by the availability of the state tort remedy for malicious prosecution, and the Borough is entitled to summary judgment on Plaintiffs' claims.  See Coulston, 2025 WL 2377676, at *15.

443 U.S. 31, 36 (1979) ("The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest."); Dempsey v. Bucknell Univ., 834 F.3d 457, 469 (3d Cir. 2016) ("[I]n reviewing probable cause determinations made by law enforcement, the role of the courts is not that of the much-maligned 'Monday morning quarterback' whose critiques are made possible only by the benefits of hindsight.").  Further, there is no evidence that the Borough acted with malice, and Plaintiffs rely on speculation.  ECF 35-1 at 15–16; ECF 39 at 21–22; Borough's SUMF, ¶¶ 19–26, 31; Plaintiffs' Response, ¶¶ 19–26, 31.

Plaintiffs also have not shown that the Borough "initiated the criminal proceedings," as the citations were not criminal charges, and Plaintiffs affirmatively challenged the citations in court. ECF 35-1 at 14–15; ECF 39 at 19; Borough's SUMF, ¶¶ 27–30, 32; Plaintiffs' Response, ¶¶ 27–30, 32; Plaintiffs' SUMF, ¶ 53; Borough's Response, ¶ 53; see also ECF 19-4; ECF 19-5; ECF 36-9; see also ECF 39-6 (Plaintiffs "continued to park in the alleyway despite multiple citations while other residents have taken corrective action").

Lastly, Plaintiffs have not shown a deprivation of liberty.  ECF 35-1 at 14–15.  Compared to a physical seizure through arrest and detention, here, Plaintiffs were not arrested, there was no required bail, no conditions restricting movement, and no requirement to report to any legal proceeding.  Borough's SUMF, ¶¶ 27, 32; Plaintiffs' Response, ¶¶ 27, 32; Plaintiffs' SUMF, ¶¶ 64–66; Borough's Response, ¶¶ 64–66; Holmes v. McGuigan, 184 F. App'x 149, 151–52 (3d Cir. 2006) (nonprecedential) (traffic citation for speeding did not result in a deprivation of liberty); Hanks v. Cnty. of Delaware, 518 F. Supp. 2d 642, 651 (E.D. Pa. 2007) (Brody, J.) (attendance at a trial or hearing does not qualify as a Fourth Amendment seizure); DiBella v. Borough of Beachwood, 407 F.3d 599, 600–01, 603 (3d Cir. 2005) (issuance of summons for defiant trespass,

30

a petty disorderly offense, and having to attend pretrial and trial hearings was not a "seizure");

Considine v. Jagodinski, 646 F. App'x 283, 288 (3d Cir. 2016) (nonprecedential) (slight

inconveniences through attending hearings are not a custodial restriction).

Therefore, the Court will **GRANT** Defendant's Motion as to Count IV.

### IX.    COUNT V – PENNSYLVANIA STATE LAW MALICIOUS PROSECUTION BY BOTH PLAINTIFFS

In Count V, both Plaintiff Richard Lewis and Plaintiff Christina Lewis bring malicious

prosecution claims under Pennsylvania state law.  See ECF 19.

#### A.  Defendant's Contentions (ECF 35)

The Borough first contends the Pennsylvania Political Subdivision Tort Claims Act

("PSTCA"), 42 Pa.C.S. § 8541, *et seq.*,[13] bars Plaintiffs' claims because malicious prosecution

does not fall within any of the enumerated exceptions to immunity.  ECF 35-1 at 16–17 (citing

Lory v. City of Phila., 674 A.2d 673, 675 (Pa. 1996)).  The Borough further argues it cannot be

liable for malicious prosecution because it is an intentional tort and "[i]ntentional torts are willful

misconduct under 42 Pa.C.S. § 8542(a)."  Id. (citing Pahle v. Colebrookdale Twp., 227 F. Supp.

2d 361, 368 (E.D. Pa. 2002) (Van Antwerpen, J.); Gonzalez v. City of Bethlehem, No. CIV. A.

---

[13] Under the PSTCA, political subdivisions (*i.e.*, local agencies) are generally immune from tort liability resulting from an injury by a City employee. 42 Pa.C.S. § 8541.  The PSTCA waives immunity only for negligent acts that fall within certain enumerated exceptions or for acts judicially determined to be crimes, actual fraud, actual malice, or willful misconduct. 42 Pa.C.S. § 8542(a).  Plaintiffs must prove (1) the cause of action is one for which recovery may be had at common law or by statute; (2) the cause of action falls within an enumerated exceptions to immunity; and (3) the injuries were caused by the "negligent acts" of the Borough, not including conduct which constitutes actual malice or willful misconduct.  Id.  The enumerated exceptions include: (1) vehicle liability; (2) care, custody, and control of personal property; (3) real property; (4) trees, traffic control devices and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody, or control of animals; and (9) sexual abuse. 42 Pa.C.S. § 8542(b).

93-1445, 1993 WL 276977, at *3–4 (E.D. Pa. July 13, 1993) (Cahn, J.); Lakits v. York, 258 F. Supp. 2d 401, 405 (E.D. Pa. 2003) (**Baylson, J.**)).

### B. Plaintiffs' Contentions (ECF 39)

Plaintiffs argue there are genuine disputes of material fact, see ECF 39 at 24, but do not identify what material facts are disputed until the Conclusion section, see id. at 24–25. Plaintiffs then "respectfully request the Court grant leave allowing Plaintiffs to amend their complaint by adding the parties already implicated in the Complaint as additional defendants." Id. at 24. Plaintiffs state that "[t]o preserve resources and promote judicial economy, Plaintiffs agreed to amend their Complaint by removing all individual Defendants. Plaintiffs were of the understanding that Defendant would not levy a defense related to a claim requiring the naming of individual Borough employees or agents." Id. at 24 n.69.

### C. Defendant's Reply (ECF 40)

On reply, the Borough argues that Plaintiffs fail to substantively engage with the merits of Defendant's arguments and therefore Plaintiffs have "effectively abandon[ed] and waiv[ed]" their state law claims. ECF 40 at 5–8. Instead, Plaintiffs ask for leave to amend their First Amended Complaint to add additional defendants. Id. at 6. The Borough states it does not know the source of Plaintiffs' "understanding" and denies that it ever represented, expressly or impliedly, that it would not levy a defense related to Plaintiffs' decision to name only the Borough as a defendant in the Amended Complaint. Id. The Borough opposes Plaintiffs' request for leave to file a Second Amended Complaint. Id. Furthermore, the Borough argues there are no material disputed facts as to whether Defendant is immune from liability on Plaintiffs' state law claims pursuant to the PSTCA. Id. at 7.

### D. Discussion

As discussed in Part VIII.C, Plaintiffs cannot establish a malicious prosecution claim under § 1983, as the officers had probable cause to issue the citations and there is no evidence that the Borough or its employees acted with malice.  See ECF 35-1 at 15–16; Borough's SUMF, ¶¶ 19–26, 31; Plaintiffs' Response, ¶¶ 19–26, 31; Perez Deposition at 16:1–17:24, 21:7-14; Lennon Deposition at 30:14–31:11, 72:9–12, 73:3-11, 96:24–98:1; see also Enforcement Memo at 2; ECF 36-9; ECF 39-6 (Plaintiffs "continued to park in the alleyway despite multiple citations while other residents have taken corrective action"); ECF 39-9.  Since the elements of a malicious prosecution claim under Pennsylvania state law are identical to those under § 1983, except for a deprivation of liberty, Plaintiffs also cannot establish a state law malicious prosecution claim.  See Tomaskevitch v. Specialty Recs. Corp., 717 A.2d 30, 33 (Pa. Commw. Ct. 1998).  Accordingly, the Court will **GRANT** Defendant's Motion as to Count V.[14]

### X.  COUNT VIII[15] – PENNSYLVANIA STATE LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY RICHARD LEWIS

In Count VIII, Plaintiff Richard Lewis brings a claim for intentional infliction of emotional distress ("IIED") under Pennsylvania state law.  ECF 19.

### A. Defendant's Contentions (ECF 35)

Like Plaintiffs' state law malicious prosecution claim, the Borough argues Plaintiff Richard Lewis' IIED claim fails under the PSTCA.  ECF 35-1 at 16–17.  As with malicious prosecution, Defendant argues IIED does not fall within any of the exceptions to immunity under the PSTCA.

---

[14] The Court also agrees with the Borough that Plaintiffs have failed to substantively respond to Defendant's Motion on Plaintiffs' state law malicious prosecution claim.  See ECF 40 at 5–8.

[15] This Count was mistakenly labeled in Plaintiffs' Amended Complaint (see ECF 19).  It should be Count VI.

Id. at 17.  Moreover, the Borough argues it cannot be liable because IIED is an intentional tort and "[i]ntentional torts are willful misconduct under 42 Pa.C.S. § 8542(a)."  Id.

### B. Plaintiff's Contentions (ECF 39)

Plaintiff Richard Lewis lumps together the same arguments for his state law IIED claims as his state law malicious prosecution claims.  ECF 39 at 24; see also Part IX.

### C. Defendant's Reply (ECF 40)

The Borough has the same arguments on reply as with Plaintiffs' state law malicious prosecution claims.  ECF 40 at 5–8; see also Part IX.

### D. Discussion

To establish a claim for IIED, a plaintiff must show: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe."  Jordan v. Pa. State Univ., 276 A.3d 751, 775 (Pa. Super. 2022).

The Court finds that Plaintiff Richard Lewis has failed to substantively respond to Defendant's Motion on Plaintiff's state law IIED claim.  ECF 40 at 5–8.  Moreover, Plaintiff has failed to show that the Borough's conduct was extreme and outrageous, and that the conduct was intentional or reckless.  Jordan, 276 A.3d at 775.  In his Complaint, Plaintiff alleges "Defendant repeatedly engaged in extreme and outrageous behavior by supporting the race-based harassment of the neighbors, and by unequally enforcing the law against the disorderly white neighbors, while citing Mr. Lewis for disorderly conduct when he was defending himself against this 21st century discrimination."  ECF 19, ¶ 115.  Plaintiff attempts to attribute the alleged harassment from the neighbors to the Borough, but CPD officers simply responding to the calls, investigating the complaints, and issuing citations accordingly is not "extreme and outrageous" behavior.

Milbourne-Hunter v. Hittle, No. 11-CV-2264, 2012 WL 5677470, at \*4 (E.D. Pa. Nov. 15, 2012) (Joyner, J.) (police officer who "acts reasonably and within the legal bounds of his authority" during a "lawful investigation" does not engage in "extreme and outrageous conduct") (citing Manley v. Fitzgerald, 997 A.2d 1235 (Pa. Commw. Ct. 2010)); see also Restatement (Second) Torts, § 46, cmt. d ("[L]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.").

Therefore, the Court will **GRANT** Defendant's Motion as to Count VIII.

## XI.  CONCLUSION

An appropriate order follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 25\25-5257 Lewis v Conshohocken\25-5257 - Memo re MSJ.docx

35